# United States Court of Appeals
## For the First Circuit

No. 05-2330

XIANG XING GAO,

Petitioner,

v.

ALBERTO GONZALES,
Attorney General of the United States,

Respondent.

ON PETITION FOR REVIEW OF AN ORDER
OF THE BOARD OF IMMIGRATION APPEALS

Before

Torruella, Lynch, and Howard,
Circuit Judges.

Jim Li on brief for petitioner.
Gina Y. Walcott-Torres, Assistant United States Attorney,
and Michael J. Sullivan, United States Attorney, on brief for
respondent.

October 26, 2006

**LYNCH**, **Circuit Judge**.  Petitioner Xiang Xing Gao, a native and citizen of the People's Republic of China, petitions for review of a final order of removal of the Board of Immigration Appeals (BIA), which denied his petition for asylum, withholding of removal, and protection under the Convention Against Torture (CAT). An Immigration Judge (IJ) found that Gao was not credible and that he had failed to establish either past persecution or a well-founded fear of future persecution.  The BIA summarily affirmed the IJ's decision, but subsequently granted a motion to reopen the proceedings.  On remand, the IJ again found Gao not credible and found that Gao had not met his burden.  The BIA summarily affirmed the IJ's decision.  We affirm the BIA and deny the petition.

                              I.

     On or about January 17, 2000, Gao entered the United States using fraudulent documents procured through a "snakehead," to whom Gao had paid $45,000.  Gao filed an application for asylum on November 3, 2000, claiming both that his wife had been forcibly sterilized and that he had been persecuted for his Roman Catholic faith.  On February 15, 2001, Gao was served with a Notice to Appear, and on November 2, 2001, Gao appeared before an IJ on his asylum claim.

     Gao was the only person to testify at the hearing before the IJ.  Gao testified that he was born in the village of Liu Shiu in the Fujian Province of China and lived most of his life there.

He and his wife married in 1977 and had one son in 1978. They had a second son in 1980, but he died in 1981. Gao testified that following the birth of his second son, his wife had an IUD inserted, which he subsequently paid a private doctor to remove. Gao testified that he and his wife then went into hiding at his cousin's house in Jiangsu Province for several years. While there, Gao and his wife had a third child in 1983. Gao testified that when his wife became pregnant with their fourth child, they were forced to move back to his village because they did not have a valid birth permit.

Gao testified that after the birth of their fourth child, in 1985, his wife went into hiding at her mother's house, fearing that she would be required to submit to sterilization. He asserted that when the local government authorities found out about the birth, they came to his house to arrest his wife, and, not finding his wife, they arrested him instead. He further testified that after his arrest, his mother contacted his wife to suggest that she submit to sterilization in order to secure his release, which she did.

Gao also testified to incidents when local officials purportedly harassed him for adhering to the Roman Catholic faith. He claimed that he was first contacted about this in 1997, and that in 1998, officials threatened him with imprisonment if he continued to practice Catholicism. Gao also testified that officials

destroyed first the cross, then the entire church, that he had contributed to building.

Following this testimony, the IJ issued an oral decision denying Gao asylum, withholding of removal, and protection under the CAT. The IJ first found that the documents Gao submitted to corroborate his testimony should be given "very little weight, virtually none." Gao had not authenticated his documents, and fraudulent documentation from his region of China was relatively common. Moreover, Gao had failed to establish a foundation for the documents and, in particular, had not established that medical reports documenting a sterilization were related to his wife.

The IJ then found Gao not credible. She found that Gao's testimony was not consistent with the U.S. State Department's Profile of Asylum Claims and Country Conditions for China, which indicated that officials employed relatively little coercion in enforcing the one-child policy. The IJ also found that Gao appeared to be economically motivated, that a sterilization fifteen years prior was an unlikely impetus for Gao's departure in 2000, and that Gao had testified inconsistently about his motivations for leaving China.

As to Gao's claim of religious persecution, the IJ found that stern lectures did not amount to past persecution, and that Gao had failed to establish a well-founded fear of future persecution, particularly since it appeared that he could live in

-4-

Jiangsu Province, where he apparently had lived for several years with no problems.

On October 10, 2002, the BIA summarily affirmed the IJ's decision. On January 3, 2003, Gao filed a motion to reopen the proceedings, on the basis of seven new documents, including one that purported to be a notice dated September 2002 from the Villagers Committee in Gao's native village ordering Gao to present himself or be subject to severe punishment for his religious activities. On April 30, 2003, the BIA granted the motion to reopen, finding that although most of the documents could have been presented at the original hearing, the September 2002 Villagers Committee notice was evidence "central to his claim" that was unavailable at the time of the November 2001 hearing.

On November 13, 2003, the same IJ heard additional testimony related to the Villagers Committee notice and Gao's claim of religious persecution. Gao testified that he had led a "parade of Virgin Mary" in a neighboring village, about an hour's walk away. Gao initially testified that this parade had taken place on August 15, 1998, but he later corrected himself and stated that the parade had been on August 15, 1985. Gao also testified that local officials arrested him and warned him not to practice Catholicism. He initially indicated that this arrest had occurred on May 21, 1995, but he later stated that it had been on May 21, 1998. Gao also testified that a local priest had been jailed for three or

four years, and that because Gao was a "Roman Catholic Church coordinator" in his village, he expected that local officials would "come after" him also.

On March 15, 2004, the IJ issued another decision finding Gao not credible and denying the relief sought. The IJ noted in particular the inconsistencies in Gao's testimony about the dates of crucial events. The IJ also expressed doubts about the authenticity of the September 2002 notice, inasmuch as it had not been authenticated, it gave a date for the religious parade that did not agree with Gao's later testimony, and Gao had never explained why local village officials would suddenly be concerned about a parade that had taken place years ago in a village an hour's walk away.

The IJ found that the various warnings, interrogations, and brief detentions described by Gao, even if true, did not amount to past persecution. The IJ also found that Gao had not established a well-founded fear of future persecution because (1) such claims were belied by his wife's continuing to practice Catholicism in their village without incident; (2) the September 2002 notice was not credible; (3) any imprisonment of the local priest did not reflect the potential treatment of individual parishioners; and (4) Gao and his family could reasonably relocate to an area such as Jiangsu Province, where they had experienced no

religious problems.  On August 17, 2005, the BIA again summarily affirmed the IJ's decision.

## II.

Gao makes several claims on appeal.  First, Gao claims that the BIA violated his due process rights in summarily affirming the IJ's March 2004 decision, when that decision did not explicitly address Gao's forced sterilization claim.  Second, Gao claims that the IJ erred in finding him not credible on both his forced sterilization and religious persecution claims.  Third, Gao claims that the IJ erred in finding that the events he described did not amount to past religious persecution and that Gao had not established a well-founded fear of religious persecution.  We consider only the first two claims; because we find that substantial evidence supports the IJ's adverse credibility determinations, we do not reach Gao's other challenges to the IJ's findings.

First, as to the due process point, Gao failed to argue before the BIA that there was anything improper in the IJ's not explicitly addressing the forced sterilization claim in the March 2004 decision.  As a result, under the doctrine of exhaustion of administrative remedies, we lack jurisdiction to consider this claim.  Olujoke v. Gonzales, 411 F.3d 16, 22-23 (1st Cir. 2005). In his brief to this court, Gao points to three sentences in his brief to the BIA that refer to his forced sterilization claim.

While these sentences may have sufficed to preserve the claim on the merits, nowhere in these sentences or elsewhere did Gao make his procedural point. Gao's due process claim is one of "mere 'procedural error[],' which the BIA plainly [could have] address[ed]," Ravindran v. INS, 976 F.2d 754, 762 (1st Cir. 1992), and hence Gao cannot raise it for the first time here.[1]

We thus proceed to consider Gao's claims on the merits. To be eligible for asylum, an alien must demonstrate that he is a "refugee." 8 U.S.C. § 1158(b)(1)(A). To do so, an alien must show "persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." Id. § 1101(a)(42)(A). One who has been "forced . . . to undergo involuntary sterilization . . . shall be deemed to have been persecuted on account of political opinion." Id. § 1101(a)(42)(B). The BIA interprets this provision to also apply to the spouses of those involuntarily sterilized. See Tai v. Gonzales, 423 F.3d 1, 4 (1st Cir. 2005). The alien bears the

---

[1] In any event, this claim lacks merit. Gao had a full and fair opportunity to present evidence on the forced sterilization claim at his first hearing, and it is clear from the record that the IJ intended to rely on her decision on that claim from the initial hearing. It was entirely reasonable for the IJ to do so, given that the document that formed the basis for the reopening of the proceedings related only to the religious persecution claim. Gao was not in any way deprived of "a meaningful opportunity to be heard" on his forced sterilization claim. See Choeum v. INS, 129 F.3d 29, 38 (1st Cir. 1997).

burden of proof for establishing his eligibility for asylum. 8 U.S.C. § 1158(b)(1)(B)(i).

We review the BIA's factual determinations, including credibility determinations, under the deferential substantial evidence standard. Dhima v. Gonzales, 416 F.3d 92, 95 (1st Cir. 2005). Such determinations must stand "unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B); see also Dhima, 416 F.3d at 95. Where the BIA summarily affirms the decision of the IJ, we review the IJ's decision as if it were that of the BIA. Albathani v. INS, 318 F.3d 365, 373 (1st Cir. 2003).

Substantial evidence supports the IJ's determination that Gao did not testify credibly that his wife was involuntarily sterilized, and that Gao therefore failed to establish persecution on that basis. To begin with, the IJ found that Gao's documentary evidence failed even to establish that his wife had in fact been sterilized, in that there was nothing to show that the medical reports Gao submitted were related to his wife. Moreover, none of the documents Gao submitted were authenticated. Given the government reports about widespread fabrication and fraud in documents originating from Gao's region of China, it was reasonable for the IJ to require some form of authentication for such documents before finding that they corroborated his testimony. See Lin v. Ashcroft, 371 F.3d 18, 22 (1st Cir. 2004).

The IJ noted that Gao's testimony was inconsistent with the U.S. State Department report, which "did not find any cases of physical force actually employed in connection with abortion or sterilization" in Fujian Province. But the IJ did not rely on the State Department report alone. The IJ also found that Gao testified inconsistently about his reasons for departing China. Gao primarily testified that he left because of religious persecution, but he also testified: "[M]y financials become [sic] very poor, and so all my child[ren] drop out of school[,] so I [was] really mad about the government[,] so I tell my wife, I say I better find some other way to leave the country." The IJ reasonably found that Gao appeared to have been economically motivated to come to the United States, and that this weighed against his credibility.[2] Furthermore, any suggestion on Gao's part that he was motivated by his wife's forced sterilization was belied by the fact that this had supposedly happened fifteen years before he departed China. Thus, substantial evidence supports the

---

[2] In affirming the IJ's decision, we do not rely on any reasoning that mere debt to snakeheads establishes that an alien is primarily motivated by his financial situation and thus is not credible in his testimony about grounds for asylum. Poor aliens should not be deemed not credible simply because they pay large sums to enter the United States. While the IJ mentioned Gao's debt, the remaining evidence cited by the IJ provides far stronger, direct support for her conclusion that Gao came to the United States not because of any purported persecution, but because of his financial situation. See Ziu v. Gonzales, 412 F.3d 202, 205 (1st Cir. 2005).

IJ's adverse credibility determination and her determination that Gao failed to establish that his wife was involuntarily sterilized.

Substantial evidence also supports the IJ's finding that Gao did not testify credibly about religious persecution. The IJ primarily relied upon the inconsistencies in Gao's testimony, particularly as to the dates of key events. Gao provides no explanation for these inconsistencies, but merely tries to label them "minor" and "incidental." It was not a "minor" inconsistency, however, for Gao to testify first that he led a religious parade on August 15, 1998, and then to state that the parade actually had taken place thirteen years earlier, on August 15, 1985. Similarly, Gao first testified that he was interrogated on May 21, 1995, but he then switched the date to May 21, 1998. In both cases, he gave each version of the testimony at least twice, so the discrepancies cannot be attributed to inadvertent slips. Moreover, the date that Gao settled on for the parade, 1985, did not agree with the date on the Villagers Committee notice that Gao relied on to establish a well-founded fear of persecution. We have no trouble finding substantial evidence to support the IJ's refusal to believe Gao's testimony on religious persecution.

Because we find that substantial evidence supports the IJ's finding that Gao was not credible and that he therefore failed to establish any evidence of persecution, we need not reach Gao's other challenges to the IJ's findings.

-11-

The petition for review is <u>denied</u>.