NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted March 20, 2007[*]
Decided March 29, 2007

**Before**

Hon. ILANA DIAMOND ROVNER, *Circuit Judge*

Hon. TERENCE T. EVANS, *Circuit Judge*

Hon. ANN CLAIRE WILLIAMS, *Circuit Judge*

No. 06-2127

| | |
|---|---|
| XIU YUN CHEN, <br> *Petitioner,* | Petition for Review of a Order of <br> the Board of Immigration Appeals |
| *v.* | No. A96 395 427 |
| ALBERTO R. GONZALES, <br> *Respondent.* | |

**O R D E R**

Xiu Yun Chen, a Chinese national from Fujian province, applied for asylum, withholding of removal, and relief under the Convention Against Torture (CAT), claiming that she fled China to escape a forced marriage with the son of a local official. The Immigration Judge denied her claims, and the Board of Immigration Appeals (BIA) adopted and affirmed the decision. Chen now petitions for review of this order. We deny the petition.

---

[*] On January 25, 2007, we granted the appellant's motion to waive oral argument. Therefore, the appeal is submitted on the briefs and the record. *See* Fed. R. App. P. 34(f).

According to Chen, Litian Lin, the son of her village chief, threatened and harassed her and her parents after she refused his proposal of marriage (the record does not reflect the nature of the threats or harassment). After several months of harassment from Lin, his friends, and his father, Chen fled to the city of Guangzhou—about a day's drive from her village.

At her hearing Chen presented somewhat conflicting testimony about whether she had further interactions with Lin. At first she said she did not, but later she testified that Lin tracked her down in Guangzhou. When the IJ interjected that her testimony was inconsistent, Chen explained that what she meant by her first answer was that she had not seen Lin again in the village. She insisted that Lin did come to Guangzhou, asked her again to marry him, and, when she refused, vowed to return and take her back to the village.

Chen testified further that friends and family then helped her flee to the United States, paying smugglers approximately $15,000. Chen added that she still owed an additional $15,000 to the smugglers, and that every month she could send back to China about $1000 from her wages.

The IJ found Chen's testimony not credible, characterizing it as "meager, "extremely vague," "implausible and totally made up." He noted her "hesitancy in answering questions" and the "changing" nature of her testimony. He disbelieved her explanation as to how Lin located her in Guangzhou, and he was troubled by the fact that she used a false passport to enter the U.S. In light of her weak testimony and the absence of corroboration, the IJ doubted that she ever received a marriage proposal and he specifically credited economics rather than marriage as the larger motive for her departure from China. But even if Chen's complaints of harassment and threats were credited, the IJ found that these threats fell "far short" of establishing past persecution. The IJ also doubted that "young females who are against marrying" could constitute a particular social group for asylum purposes, but even if they could, Chen failed to show that she would be persecuted on account of the group's characteristics. Finally, the IJ concluded that Chen had not shown a well-founded fear that she would be persecuted in the future, and he noted in particular that she would be able to relocate without difficulty.

In her petition for review, Chen challenges the IJ's credibility determination, claiming that his reasons were "vague," that he ignored her explanation for the purported inconsistency in her testimony, and that he drew inappropriate inferences about her use of a false passport. However, an IJ's finding regarding credibility is entitled to highly deferential review, *Georgis v. Ashcroft*, 328 F.3d 962, 968 (7th Cir. 2003), and is overturned only under extraordinary circumstances, *Oforji v. Ashcroft*, 354 F.3d 609, 613 (7th Cir. 2003). "[W]e look only for specific,

cogent reasons that bear a legitimate nexus to the IJ's finding." *Apouviepseakoda v. Gonzales*, 475 F.3d 881, 889 (7th Cir. 2007).

Here, the IJ adequately supported his adverse credibility finding. First, he permissibly found in Chen's failure to provide detailed, specific examples of Lin's purported "threats" and "harassment" a reason to doubt her testimony. *See Demirovski v. INS*, 39 F.3d 177, 181 (7th Cir. 1994). Second, he found that her demeanor on the stand was "hesitant" and observed that she appeared to be making up answers on the spot. *See Nigussie v. Ashcroft*, 383 F.3d 531, 537 (7th Cir. 2004). Third, the IJ noted that Chen's testimony was inconsistent regarding whether she saw Lin again after she left her village, a matter that went to the heart of her asylum claim. *See Capric v. Ashcroft*, 355 F.3d 1075, 1090 (7th Cir. 2004). The IJ did not credit her attempt to explain away the inconsistency, but we defer to his decision because Chen's explanation was not so persuasive that "a reasonable factfinder would have been compelled to accept" it. *Yuan Rong Chen v. Gonzales*, 457 F.3d 670, 673 (7th Cir. 2006). Although we uphold the adverse credibility finding as a whole, we do not adopt his reasoning that Chen should have been discredited for using a false passport, *see Shtaro v. Gonzales*, 435 F.3d 711, 717 (7th Cir. 2006); *Dong v. Gonzales*, 421 F.3d 573, 579 (7th Cir. 2005), or for paying a large sum of money to "snakeheads" (paid smugglers) to bring her into the U.S., *see Gao v. Gonzales*, 467 F.3d 33, 38 n.2 (1st Cir. 2006).

Chen also challenges the IJ's conclusion that she did not fear persecution as a member of a particular social group. We must first note that the IJ's description of Chen's proposed social group as "young females that are against marrying" is inaccurate, and it denigrates and minimizes Chen's claim. Chen claims membership not in a group comprised of women generally opposed to marriage, but rather comprised of women who have been forced or fear being forced into marriage. She relies in particular on *Gao v. Gonzales*, in which the Second Circuit recognized a social group consisting of "women who have been sold into marriage (whether or not that marriage has yet taken place) and who live in a part of China where forced marriages are considered valid and enforceable." 440 F.3d 62, 70 & n.6 (2nd Cir. 2006). Chen cannot belong to the social group defined in *Gao*, which explicitly limited its social-group definition to the facts of the case, *see id.*, because she was not sold into marriage. But even if we were to assume the existence of a social group of the sort that Chen proposes, and if we were further to assume that Chen belongs to such a group, she would still be ineligible for asylum because she cannot show a well-founded fear that she will be singled out for persecution on that basis in the future.[1] 8 U.S.C. §§ 1101(a)(42)(A); 1158(b)(1)(B)(i). Chen would need to show a

_____

[1] Chen does not contest the IJ's finding that she failed to establish past
                                                                    (continued...)

fear of persecution that is subjectively genuine and objectively reasonable, *see Prela v. Ashcroft*, 394 F.3d 515, 519 (7th Cir. 2005), and "so compelling that no reasonable factfinder could fail to find the requisite fear of persecution." *INS v. Elias-Zacarias*, 502 U.S. 478, 484 (1992). Chen has not pointed to any record evidence which would support the inference that if she were returned to China, Lin would act on his past threats or that actual harm would befall her. *See Zhu v. Gonzales*, 465 F.3d 316, 321 (7th Cir. 2006). And nothing in the record suggests that Chen would be unable to avoid further encounters with Lin by relocating within China at a greater distance from her former village than Guangzhou.

Because Chen has not satisfied her burden of proving her eligibility for asylum, she cannot meet the more demanding standard for withholding of removal. 8 U.S.C. § 1231(b)(3)(A); 8 C.F.R. § 208.16(b); *Prela*, 394 F.3d at 519; *Hasanaj v. Ashcroft*, 385 F.3d 780, 783 (7th Cir. 2004).

Finally, Chen contends that the IJ denied her due process during her removal hearing because he questioned her extensively and somewhat adversarially and because he had "already made up his mind" about her case. The government argues that we lack jurisdiction to review this issue because Chen failed to raise it before the BIA. *See* 8 U.S.C. § 1252(d)(1); *Capric*, 355 F.3d at 1087. This is a close question, but we believe that Chen did sufficiently raise the issue when she apprised the board in her brief that the IJ "ignored . . . due process," "had a preconceived opinion on the case," and that she, as a direct result of the IJ's questioning, was unable to present her claim in sufficient detail and rebut the negative inferences drawn by the IJ.

We do not believe, however, that Chen's due process rights were violated. This is not a case, for instance, in which the IJ barred "complete chunks of oral testimony that would support the applicant's claims," *Kerciku v. INS*, 314 F.3d 913, 918 (7th Cir. 2003), or curtailed an applicant's testimony on matters that go to the heart of the claim, *Podio v. INS*, 153 F.3d 506, 510-11 (7th Cir. 1998), or where evidence excluded by the IJ "had the potential for affecting the outcome of the proceedings." *Rodriguez Galicia v. Gonzales*, 422 F.3d 529, 540 (7th Cir. 2005). The IJ may have interjected questions, and questioned the veracity of her testimony or the persuasiveness of her claim, but none of this shows that she was denied "a meaningful opportunity to be heard." *Nazarova v. INS*, 171 F.3d 478, 482 (7th Cir. 1999). Nor has she made any showing of prejudice—by identifying, for example, the testimony or evidence that she would have presented but for the IJ's conduct—as

---

[1](...continued)
persecution.

she must in order to prevail on a due process claim. *See id.*; *Kharkhan v. Ashcroft*, 336 F.3d 601, 606 (7th Cir. 2003); *Kerciku*, 314 F.3d at 918.

Accordingly, we DENY the petition for review.