NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois  60604**

Argued July 11, 2007
Decided January 23, 2008

**Before**

Hon. RICHARD A. POSNER, *Circuit Judge*

Hon. JOHN L. COFFEY, *Circuit Judge*

Hon. DIANE S. SYKES, *Circuit Judge*

No. 06-4153

| | |
|---|---|
| XIU JUAN ZHANG,<br>*Petitioner*, | On Petition for Review of an Order of<br>the Board of Immigration Appeals |
| *v.* | No. A78-848-829 |
| MICHAEL B. MUKASEY,<br>Attorney General of the United States,<br>*Respondent*. | |

## O R D E R

Facing removal for attempting to enter the United States with a false passport, Xiu Juan Zhang applied for asylum, withholding of removal, and relief under the Convention Against Torture, claiming that she fears arrest and torture in her native China for helping her parents organize Falun Gong meetings.  The Immigration Judge ("IJ") denied all forms of relief, finding Zhang not credible primarily based on inconsistencies between her testimony at the removal hearing and earlier sworn statements.  The Board of Immigration Appeals ("BIA") affirmed, and Zhang petitions for review.  Although some of the IJ's reasons for disbelieving Zhang involved mere speculation or conjecture, we conclude that the crux of the IJ's adverse credibility finding is supported by substantial evidence, and we deny the petition for review.

## Background

Zhang, 32, comes from the city of Changle, in Fujian Province. She lived there with her parents, who she says have practiced Falun Gong—including hosting group meditation and video screenings in their home—since late 2000. Zhang herself has never practiced Falun Gong, but she says she helped her parents by handing out fliers and notifying neighbors about upcoming meetings.

On July 26, 2001, Zhang arrived at O'Hare Airport in Chicago. After an immigration officer recognized her passport as false, Zhang made a series of sworn statements, through an interpreter, in response to his questions. At first she explained that she fled China because authorities had tried to arrest her after discovering her association with Falun Gong. Later during the interview, though, she acknowledged that she had never been arrested or even threatened with arrest. When the inspector then demanded to know whether Zhang had been "lying" when she said that the police "tried to arrest" her, she responded: "Yes, but they arrested other people. They arrested a couple of my neighbors. Once I found out I left the country."

Two weeks later, again with the aid of an interpreter, Zhang sat for her credible-fear interview. When the asylum officer asked whether she had been mistreated in China, Zhang said that she fled the country upon learning that the police were going to arrest her for organizing her mother's Falun Gong group. She made no claim that she had been arrested in China before she fled.

Two and a half years later, Zhang filed her asylum application.[1] For the first time, she asserted that she had been arrested and detained for ten days in China. That arrest, she said, was for "trying to escape China"; she did not link it to her connection with Falun Gong.

Zhang's story changed again at her removal hearing. There she explained that her association with Falun Gong began causing her trouble in early June 2001 when she heard from a friend that the police had come to her house while she was out. Zhang said she later learned that the police were looking for her because other Falun Gong practitioners had identified her as an organizer of Falun Gong meetings. According to Zhang, the policemen's visit immediately spurred her to obtain a fake Chinese passport and attempt to flee China.

---

[1] At her asylum hearing, the IJ noted that Zhang attempted to file her asylum application in 2002, within one year of her arrival, but that it was incorrectly rejected and so the one-year limitation was not an issue. *See* 8 U.S.C. § 1158(a)(2)(B).

Zhang testified that she did not succeed on her first try and was arrested at the border in Guangxi Province on June 8, 2001. During the next two days, she said, security officers gave her little to eat, forced her to sleep on a cement floor, prodded her with an electric rod, and struck her head with a heavy book. After that, Zhang continued, she was transferred back to her home city of Changle and detained at a police station for a week. On her first day there, she recounted, officers beat her and cut her neck with glass, requiring two security policemen to escort her to a hospital. Zhang submitted a receipt from a Changle hospital dated June 11, 2001, which corroborates that she was cut by glass on the lower left part of her neck, was bleeding seriously, and required eight stitches. (At Zhang's hearing the IJ acknowledged that she has a scar.) Zhang testified that for the duration of her detention in Changle she received just one meal per day and was interrogated about her fake Chinese passport and her association with Falun Gong.

Zhang finally was released, she said, on the condition that she pay a fine of 3000 yuan (then about $362). This penalty, she explained, was assessed not because she tried to leave China on a false passport (as Zhang had said in her asylum application and as is memorialized on the purported record of the fine she submitted at the hearing), but because of her connection to Falun Gong. Zhang testified that she also was told to report regularly to the Changle police, attend a reeducation class, and remain in the city. Zhang said she later heard that her parents also had to attend reeducation classes.

When the IJ pressed Zhang about why she had not disclosed this purported arrest and detention earlier, Zhang claimed that no one had asked her if she had been arrested. And, she added, she did not volunteer information about the arrest because she was afraid she would be sent back to China.

Zhang testified that after her release she bought a false United States passport from a snakehead for a total cost of $68,000. She paid $7000 up front, with her parents obligating themselves to pay the balance of $61,000 once she arrived safely in the United States. That passport got her as far as O'Hare Airport.

The IJ disbelieved Zhang's story and denied her application. In finding Zhang not credible, the IJ pointed first to the inconsistencies between her hearing testimony and the statements she made upon arriving at O'Hare and during her credible-fear interview. The IJ reasoned that Zhang's failure to disclose her alleged arrest, detention, and beating in either her airport interview or credible-fear interview "casts serious doubt on the credibility of her overall claim." The IJ also noted a variety of purportedly "confusing" and "implausible" aspects of Zhang's testimony. First, he did not believe Zhang's testimony that she was detained for ten days for helping her mother organize Falun Gong meetings since in her asylum application she had given as the reason for her arrest her attempt to leave China on

a false passport.  Second, the IJ thought it implausible that Chinese authorities would beat Zhang solely for associating with practitioners of Falun Gong but leave her parents, who are practitioners, unharmed.  Third, he did not believe that Zhang would notify neighbors about Falun Gong meetings in the face of the government's crackdown on the practice.  He also found troubling Zhang's testimony that she knew little about the practice of Falun Gong.  Finally, the IJ doubted that Zhang, as a nonpractitioner of Falun Gong, would pay $68,000 to flee China knowing that the worst punishment her parents had suffered for actually practicing Falun Gong was a reeducation class.  He speculated that Zhang came to the United States for economic reasons and not because of a fear of persecution.

The IJ further concluded that Zhang had not submitted sufficient corroborative evidence to overcome her lack of credibility.  He noted that Zhang did not submit affidavits from family members in China or present enough evidence to conclude that her scar was indeed caused by her alleged detention.  He also noted that the record of her 3000 yuan fine states that she was penalized for trying to depart China illegally, not for associating with Falun Gong.

The BIA affirmed, highlighting the discrepancies between Zhang's initial statements to authorities and her testimony before the IJ about her alleged arrest in China.  The BIA also noted the inconsistency between Zhang's initial testimony that she was arrested for attempting to depart China illegally and her later testimony that she was detained because of her association with Falun Gong.  The BIA concluded that Zhang had not provided sufficient corroboration of her claim to overcome the significant discrepancies in her testimony and dismissed her appeal.

## Analysis

Zhang argues that the adverse credibility finding is not supported by substantial evidence.  She maintains that her statements at her airport and credible-fear interviews were not inconsistent with her hearing testimony, and that her explanation for initially omitting the story of her arrest—that she was afraid of being sent back to China—should have been believed.  She also argues that the IJ's confusion about the circumstances of her arrest were his alone and that his disbelief that she would receive harsher punishment than her parents is not supported in the record.  Finally, Zhang says that the IJ's conclusion that she came to the United States for economic reasons is speculative and illogical.

Where, as here, the BIA affirms, adopts, and supplements the IJ's opinion, we review both the IJ's decision and any additional reasoning of the BIA.  *Mema v. Gonzales*, 474 F.3d 412, 416 (7th Cir. 2007).  We will uphold the IJ's decision if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole, and will overturn it only if the record compels a contrary

result. *Id.* An IJ's credibility determination must be supported by "specific, cogent reasons that bear a legitimate nexus to the finding." *Feto v. Gonzales*, 433 F.3d 907, 911 (7th Cir. 2006).[1] Immaterial discrepancies in an asylum applicant's testimony will not support an adverse credibility finding, *Giday v. Gonzales*, 434 F.3d 543, 551 (7th Cir. 2006), nor will an IJ's "own speculation, conjecture, or unsupported personal opinion," *Jiang v. Gonzales*, 485 F.3d 992, 995 (7th Cir. 2007).

We agree with Zhang that some of the IJ's reasons for disbelieving her testimony rest on "speculation, conjecture, or unsupported personal opinion." *See Jiang*, 485 F.3d at 995. For example, the IJ was skeptical that Zhang, who does not practice Falun Gong, would help her parents organize Falun Gong meetings. But he does not explain, nor can we see, why that aspect of her story should be disbelieved. Nor do we find implausible Zhang's testimony that her parents would ask her to contact neighbors about upcoming meetings, despite the Chinese government's crackdown on the practice. And given Zhang's consistent testimony that she did not practice Falun Gong, we are not troubled, as the IJ was, by her lack of knowledge of Falun Gong. Lastly, we cannot infer, as the IJ did, that Zhang's payment of a large sum to a snakehead revealed an economic motive for coming to the United States; her willingness to pay could just as easily support her fear of persecution. *See Gao v. Gonzales*, 457 F.3d 33, 38 n.2 (1st Cir. 2006).

Despite these weaknesses in the IJ's opinion, though, the main inconsistencies cited by the IJ and the BIA—Zhang's failure to disclose her purported arrest and detention during her airport interview and later credible-fear interview—suffice to support the adverse credibility finding because the omissions undermine Zhang's entire claim of past persecution. *See Tarraf v. Gonzales*, 495 F.3d 525, 532-33 (7th Cir. 2007); *Huang v. Gonzales*, 453 F.3d 942, 945-47 (7th Cir. 2006) (upholding adverse credibility determination based on a single significant inconsistency); *Giday*, 434 F.3d at 551. At the airport interview, Zhang said that the Chinese authorities had arrested Falun Gong practitioners, but she admitted that they did not try to arrest her. And instead of saying that she had been detained and beaten for associating with Falun Gong, she said that she left the country immediately after she heard that others had been arrested. Then weeks later at her credible-fear interview with a different immigration officer, Zhang again said nothing about having been arrested and detained. Indeed, when asked specifically whether she or a member of her family had been mistreated or threatened, she said only that she fled the country because she had been told that the police were going to arrest her. Even in her asylum application, where she first

---

[1] Our credibility analysis is unaffected by the passage of the REAL ID Act of 2005, *see* Pub. L. No. 109-13, 119 Stat. 231, which governs only cases in which the petition for asylum was filed on or after May 11, 2005. *Oyekunle v. Gonzales*, 498 F.3d 715, 717-18 (7th Cir. 2007).

disclosed her purported arrest and detention, Zhang swore that she was caught trying to leave China illegally and punished for that offense, not for associating with Falun Gong. At her removal hearing four years later, the story changed yet again: the police did not merely "try" to arrest her; they arrested her, detained her for ten days, and beat her—and this time Zhang insisted that the reason was her association with Falun Gong.

The IJ and BIA reasonably discredited Zhang's testimony based on her alteration and embellishment of earlier stories. We have said repeatedly that "in an attempt to bolster the asylum claim, the addition of new factual assertions that were not originally set forth can be viewed as inconsistencies providing substantial evidence that the applicant is not a reliable or truthful witness." *Oforji v. Ashcroft*, 354 F.3d 609, 614 (7th Cir. 2003); *see Tarraf*, 495 F.3d at 532-33. In *Oforji*, the applicant said at her airport interview that she had fled for economic reasons and had not been persecuted in her native Nigeria, but later claimed in her asylum application that she fled because of her political activity and because the government had arrested and killed her husband. 354 F.3d at 613-14. In *Tarraf*, the applicant did not mention any physical violence in his asylum application and said that he had been detained and questioned for three days; but at his hearing he said that he had been detained, severely beaten, and tortured and interrogated for thirty days. 495 F.3d at 533. Like the applicants' new details in *Oforji* and *Tarraf*, Zhang's story of her arrest and detention added significant factual assertions—indeed, her entire claim of past persecution—that she never made in her initial interviews, despite being asked multiple times whether she had been arrested or mistreated.

Zhang argues that the IJ should have credited her explanation for failing to disclose the arrest and detention at her credible-fear interview. But her initial explanation—that she was not asked whether she had been arrested—was false. And her subsequent explanation—that she did not volunteer the information because she was afraid of being sent back to China—was not so compelling as to require us to overturn the adverse credibility finding. *See Tarraf*, 495 F.3d at 533-34. Zhang omitted the story of her arrest and detention both in her airport and credible-fear interview, but she was not afraid to reveal to U.S. authorities that the police "tried" to arrest her, that she feared arrest if returned, and that she entered using a false passport. Although we have said that "testimony that an applicant gave false information to immigration authorities for fear of deportation to a persecuting country can be entirely *consistent* with a fear of persecution," *Galicia v. Gonzales*, 422 F.3d 529, 537 (7th Cir. 2005), the record does not compel that conclusion here.

Accordingly, we DENY the petition for review.